**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

---

|  |  |  |
|---|---|---|
| | : | |
| EQUINOX PROPERTIES, LLC, | : | |
| | : | |
| Plaintiff, | : | Case No. 21-cv-15929 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| THE HARFORD MUTUAL INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion for Summary Judgment (ECF No. 29) and related Motion to Exclude the Opinion of Plaintiff's Expert, Scott Wolfertz (ECF No. 30) filed by Defendant the Harford Mutual Insurance Company. For the reasons expressed below, Defendant's motions are **DENIED**.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This is an insurance coverage dispute between Plaintiff Equinox Properties, LLC, and Defendant Harford Mutual Insurance Company over a claim for coverage of physical damage to Plaintiff's commercial property. Plaintiff Equinox is a limited liability company which owns the property at issue in Woodbury, New Jersey. (ECF No. 29 at 4 *et seq.* ("Def. Mat. Facts") at ¶¶ 1, 3). Equinox is owned by Michael Mandale. (*Id.* ¶ 1). On or about August 12, 2020, the property suffered damage due to "a sudden and accidental discharge of water" caused by heavy rains and wind. (ECF No. 9 ("Compl.") ¶ 6; Def. Mat. Facts ¶ 6; ECF No. 33 at 4 *et seq.* ("Pl. Mat. Facts" ¶ 6). Plaintiff retained Scott Wolfertz of Metro Public Adjustment ("Metro"), a licensed public

adjuster, to assist Plaintiff with its insurance claim to cover the loss, including by assessing the scope of damages as well as the cause of the loss. (ECF No. 33 at 13 *et seq.* ("Pl. Br."), at 2). Mr. Wolfertz first inspected the property on September 15, 2020, and conducted several further inspections and reviewed insurance documents on behalf of Plaintiff. (*Id.*; Pl. Mat. Facts ¶ 14).

Plaintiff submitted a claim under its insurance policy with Defendant to cover the building's interior water damage. (Def. Mat. Facts ¶ 6). The policy provides, in relevant part:

> We do not pay for loss of or damage to:
>
> . . .
>
> **(5)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
>
>> **(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters . . . .

(Def. Mat. Facts ¶ 4). In addition, the policy excludes coverage for loss or damage resulting from wear and tear. (*Id.* ¶ 5). Defendant hired an independent adjuster, Robert Carroll, to inspect the property's damage on August 21, 2020. (*Id.* ¶ 7). Mr. Carroll determined that the damage was caused by water that had intruded under the roofing membrane into the interior of the building. (*Id.* ¶ 8). He observed areas of deterioration of the roof seams, which may have contributed to the water damage. (*Id.* ¶ 9). Mr. Carroll also inspected the interior plumbing pipe and determined that there were no signs of pipe failure and that the pipe did not have water marks. (*Id.* ¶ 10).

Based on Mr. Carroll's inspection, Defendant denied coverage for the claim because the insurance policy does not provide coverage for damage caused by wear and tear. (Def. Mat. Facts ¶¶ 12–13). Defendant sent Plaintiff a coverage denial letter on October 9, 2020, which explained that Defendant's inspection "revealed no evidence of damage to the roof or exteriors walls caused by . . . any . . . covered cause of loss" and that the inspection "revealed evidence of

wear and tear. . . which likely has contributed to the interior water intrusion." (ECF No. 29, Ex. E at 1). The letter also noted that the damage was caused by "wind-driven rain." (*Id.*). Plaintiff requested a re-inspection of the loss. (Def. Mat. Facts ¶ 17). Defendant retained a second independent adjuster, Paul C. Hagan, who inspected the property on March 4, 2021. (*Id.* ¶¶ 17– 19). Mr. Hagan found no signs of a pipe leak and determined that deterioration of the roof had caused the water intrusion. (*Id.* ¶¶ 19–20). Following Hagan's findings, Defendant sent Plaintiff a letter confirming its coverage position on March 10, 2021. (*Id.* ¶ 21).

On July 9, 2021, Plaintiff filed a complaint against Defendant in New Jersey Superior Court, seeking to recover coverage under the insurance policy as well as punitive damages, attorney's fees, and costs. (ECF No. 1). Defendant removed to this Court on August 24, 2021. (*Id.*). On January 10, 2023, Defendant filed the instant motion for summary judgment and motion in limine, which brings a *Daubert* challenge against Plaintiff's expert witness, Mr. Wolfertz. We address the motions in reverse order, resolving the *Daubert* motion before considering Defendant's motion for summary judgment.

## II.   *DAUBERT* MOTION

Defendant's motion in limine (ECF No. 30 ("Def. MIL")) seeks to exclude Plaintiff's expert, Mr. Wolfertz, from testifying regarding causation. The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which was amended in 2000 to reflect the Supreme Court decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Rule is as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under this rule, we act as a "gatekeeper" to ensure that expert testimony is both relevant and reliable. *Pineda v. Ford Motor Co.,* 520 F.3d 237, 243 (3d Cir. 2008). Rule 702 has a "'liberal policy of admissibility.'" *Id.* (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)).

To be admissible, expert testimony must satisfy three requirements under Rule 702: (1) the witness must be an expert (i.e. must be qualified); (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge (i.e. must be reliable); and (3) the expert's testimony must assist the trier of fact (i.e. must fit). *Id.* at 806 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994)); *see also Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (Rule 702 provides "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit."). The party offering the expert testimony carries the burden of establishing that the proffered testimony meets the three requirements by a preponderance of the evidence. *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999). "A court's rejection of expert testimony should be the exception rather than the rule." *Luppino v. Mercedes-Benz USA, LLC*, No. CV095582, 2015 WL 12819051, at *3 (D.N.J. June 29, 2015) (citing Fed. R. Evid. 702 Advisory Committee Note). "If the expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997).

Defendant argues Mr. Wolfertz's expert testimony should be excluded for two reasons. First, Defendant argues Mr. Wolfertz is not qualified to testify regarding causation and therefore is not an "expert" within the meaning of Rule 702. Second, Defendant argues Mr. Wolfertz's expert report is speculative and not based on reliable methodology. We address each argument in

4

turn. Because we find Mr. Wolfertz is qualified and his methods are reliable within the meaning

of Rule 702, we will deny Defendant's *Daubert* motion.[1]

### A.    Whether Mr. Wolfertz is Qualified

Qualification requires "that the witness possess specialized expertise." *Schneider ex rel.*
*Estate of Schneider v. Fried,* 320 F.3d 396, 404 (3d Cir. 2003). Rule 702's qualification
requirement is to be liberally construed. *Pineda*, 520 F.3d at 244; *see also Paoli,* 35 F.3d at 741
(a "broad range of knowledge, skills, and training qualify an expert"). "[I]t is an abuse of
discretion to exclude testimony simply because the trial court does not deem the proposed expert
to be the best qualified or because the proposed expert does not have the specialization that the
court considers most appropriate." *Id*. (quoting *Holbrook v. Lykes Bros. S.S. Co*., 80 F.3d 777,
782 (3d Cir. 1996)). A court should "eschew[] overly rigorous requirements of expertise and [be]
satisfied with more generalized qualifications." *Paoli*, 35 F.3d at 741 (citing *Hammond v.*
*International Harvester Co.*, 691 F.2d 646, 652–53 (3d Cir. 1982) and *Knight v. Otis Elevator*
*Co.*, 596 F.2d 84, 87–88 (3d Cir. 1979)). For instance, "an otherwise qualified witness is not
disqualified merely because of a lack of academic training." *Waldorf v. Shuta*, 142 F.3d 601, 626
(3d Cir. 1998). For an expert witness to be qualified to testify as to causation, the witness must,
"at a minimum," "possess skill or knowledge greater than the average layman in determining
causation." *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 114 (3d Cir. 1987).

---

[1] In certain instances, courts are obligated to hold a *Daubert* hearing before deciding whether to exclude expert
testimony. *Padillas v. Stork–Gamco, Inc.*, 186 F.3d 412, 417 (3d Cir. 1999). Where a report is "conclusory and did
not adequately explain the basis for [the expert's] opinion or the methodology employed in reaching his
conclusions," the "plaintiff needs an 'opportunity to be heard' on the critical issues of scientific reliability and
validity." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 152 (3d Cir. 2000) (holding that the district court did not err "in
granting summary judgment here without an in limine hearing"). Where the evidentiary record is substantial
however, or the court has before it the information necessary to determine that the expert lacks "good grounds" for
his conclusions, an in limine hearing may be unnecessary. *Id.* at 153. Here, we find the record is extensive and a
*Daubert* hearing is unnecessary.

Defendant argues Mr. Wolfertz is not qualified within the meaning of Rule 702 because he "is not a professional engineer or licensed plumber," and he does not have any certifications or other formal qualifications related to causation. (Def. MIL at 12). In support, Defendant cites *Balu v. Cincinnati Ins. Co.*, in which the court held a licensed public adjuster was not qualified to testify as to causation because "expertise at identifying and estimating the cost to repair damage is not expertise at identifying the cause of the damage." 2021 WL 1427651, at *3 (E.D. Pa. Apr. 15, 2021). Because the proffered expert did not have "any expertise by education or experience in opining on the cause of water damage," the court excluded his testimony under Rule 702. In response, Plaintiff points out that, in addition to his formal qualifications and experience as a public adjuster, Mr. Wolfertz is a "seasoned contractor" who owned and operated a construction and remodeling company for forty-five years. (ECF No. 34 at 9–10). As a contractor, Mr. Wolfertz has repaired or replaced over 3,000 roofs. (*Id.* at 9). Thus, unlike the expert in *Balu*, Mr. Wolfertz has decades of experience, beyond his experience as an adjuster, that are relevant to identifying the cause of the water damage coming from the roof at issue in this case. Because he "possess[es] skill or knowledge greater than the average layman in determining causation," we find that Mr. Wolfertz is qualified within the meaning of Rule 702. *See Aloe Coal*, 816 F. at 114.

### B.     Whether Mr. Wolfertz's Expert Testimony is Reliable

To be reliable, an expert opinion must be "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation[.]'" *Paoli*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 589). Further, "the expert must have 'good grounds' for his or her belief." *Id*. The focus of the reliability inquiry is on the expert's principles and methodology, not

on his conclusions. *Daubert*, 509 U.S. at 595. In determining reliability, courts look to several non-exhaustive factors, including:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Elcock v. Kmart Corp.*, 233 F.3d 734, 745–46 (3d Cir. 2000) (quoting *Paoli*, 35 F.3d at 742 n.8). This list of factors is non-exclusive, and each factor does not necessarily apply in every case. *Elcock*, 233 F.3d at 746 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Some factors of the *Daubert* reliability test, including testable hypotheses and the standards controlling a techniques operation, can only be "roughly analogized" when reviewing non-scientific evidence. *Elcock*, 233 F.3d at 747. When determining the reliability of a non-scientific method, "a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Id.* at 746.

Many factors of the Daubert reliability test are not applicable when a non-scientific expert's methodology is being scrutinized. *West Am. Ins. Co. v. Jersey Cent. Power & Light Co.*, 2008 WL 5244232, at *4 (D.N.J. Dec. 15, 2008). The test for reliability is not whether a particular opinion has the best foundation or is correct, but if it is centered on valid reasoning, reliable methodology, and sufficient standards. *Id.* at *6 (citing *Oddi*, 234 F.3d at 145–46). In *West American*, the court permitted nonscientific expert testimony even though the methods used were not testable, were not subject to peer review, and included no quantifiable potential rate of error. *Id.* at *7. The court noted that in some cases the expert's training and experience will provide an adequate and reliable foundation to admit an opinion for consideration by a jury. *Id.* at *8 (citing *Oddi*, 234 F.3d at 158). "Cases where courts have allowed testimony based on the

7

experience of the expert often involve testimony as to custom and practice that has been acquired via such experience." *Id.* at *8 (citing *Oddi*, 234 F.3d at 158); *see also Lauria v. National Railroad Passenger Corp.*, 145 F.3d 593, 599 (3d Cir. 1998) (former rail foreman's many years of experience with railroad track equipment, maintenance, and safety equipment qualified him as an expert to testify about Amtrak's responsibility to inspect and maintain railroad track in a safe condition).

Defendant argues Mr. Wolfertz's report is not reliable because "it does not include any details or observations supporting a causal determination." (Def. MIL at 14). The report is based on Mr. Wolfertz's personal inspections of the property. (*Id.*, Ex. C at 1) ("I inspected the property on September 15, 2020, and multiple times after."). Mr. Wolfertz's opinion is grounded in observations made during his inspections of both the roof and an internal pipe. (*Id.*) (observations made include "water leaking from an internal pipe from the downspout system," "an emergency repair to the pipe," and no "areas where water could have penetrated the roof," among other observations). His opinion is based on his decades of experience "as a public adjuster and contractor." (*Id.* at 2). In cases involving damage to property, an expert's personal inspection of the property, combined with his experience and expertise, is generally sufficient to meet the reliability requirement under Rule 702. *See West Am. Ins. Co.*, 2008 WL 5244232, at *8; *see also Oddi*, 234 F.3d at 158 ("[T]here may be some circumstances where one's training and experience will provide an adequate foundation to admit an opinion and furnish the necessary reliability to allow a jury to consider it."). We find Mr. Wolfertz's personal inspections of the property, combined with his years of experience as a contractor and public adjuster, sufficient to meet the reliability requirement.

Defendant next argues Mr. Wolfertz's methods are not reliable because they are contradicted by prior statements by Mr. Wolfertz. However, the contradictory statements go towards the credibility of Mr. Wolfertz's opinion, not the reliability of his methods. Plaintiffs "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *In re Paoli*, 35 F.3d at 744. We find Plaintiff has demonstrated that Mr. Wolfertz's methods are reliable. Defendants are welcome to impeach his testimony using evidence of contradictory statements at trial.

Because Mr. Wolfertz is qualified to provide expert testimony as to the cause of the property damage and because his methods are reliable, Defendant's motion to exclude his testimony is denied.

## III.   MOTION FOR SUMMARY JUDGMENT

### A.   Legal Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law.*" Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of showing the absence of a "genuine issue of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). A party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes this showing, the nonmovant must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

"When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). The court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998), while credibility determinations are left to the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.      Discussion**

Defendant argues it is entitled to judgment as a matter of law because Plaintiff has not demonstrated there is a genuine dispute of material fact as to Plaintiff's breach of contract claim. To establish a breach of contract claim, a plaintiff must show evidence establishing (1) the existence of a valid contract, (2) defective performance, and (3) resulting damages. *Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985). Here, Defendant argues there is no genuine dispute as to performance under the contract, because "Plaintiff produced no evidence that the loss was caused by anything other than water penetrating through a heavily deteriorated roof," a cause of loss that is not covered under the terms of the insurance policy.

"Insurance policies are contracts of adhesion and, as such, are subject to special rules of interpretation." *Gibson v. Callaghan*, 158 N.J. 662, 669 (1999). In interpreting insurance policies, courts must "assume a particularly vigilant role in ensuring conformity to public policy and principles of fairness." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992). Generally, the policy should be interpreted according to its plain, ordinary meaning. *Gibson*, 158 N.J. at 670. However, where it is ambiguous, "doubts should be resolved in favor of the insured and thus in favor of coverage." *Voorhees*, 128 N.J. at 173. Further, because an insurance policy should be construed to comport with the objectively reasonable expectations of the insured, "even an unambiguous contract has been interpreted contrary to its plain meaning so as to fulfill the reasonable expectations of the insured." *Werner Indus., Inc. v. First State Ins. Co.*, 112 N.J. 30, 35–36 (1988). "In general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 155 N.J. 29, 41 (1998).

There are two policy exclusions at issue here. First, the policy excludes coverage for damage to the interior of the building caused by rain unless "[t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls" through which the rain enters. (ECF No. 29, Ex. A at 26). Second, the policy excludes damage caused by "wear and tear," "other corrosion, decay, deterioration, . . . or latent defect . . . that caauses it to damage or destroy itself," or "settling, shrinking, cracking or expansion" of the building. (*Id.* at 44, 46).

Defendant argues it has established that the property damage was caused by "a heavily worn and deteriorated roof" and thus falls under the exclusion of interior damage caused by rain and the exclusion for losses caused by wear and tear. Defendant's expert, Robert Mailer, opines that the damage to the roof occurred because of "the progressive failure of the roof membrane,"

11

as evidenced by areas of the roof membrane that were "highly deteriorated where ponded water had collected for an extended period of time." (ECF No. 29 at 5). Defendant argues Plaintiff has produced no evidence to create a genuine dispute that Mr. Mailer's finding is incorrect, and therefore there is no genuine dispute that the damage falls under the policy's exclusions.

We disagree. Defendant relies in large part on the exclusion of Mr. Wolfertz's expert opinion, without which Plaintiff would have difficulty disputing Mr. Mailer's testimony as to causation. However, we have already denied Defendant's request to exclude Mr. Wolfertz's report. Because the two experts present opposing evidence as to the cause of the damage, there is a genuine dispute of material fact as to causation. Plaintiff also points to further evidence that disputes Defendant's position, such as evidence that the roof was not deteriorated, evidence that goes to the credibility of Mr. Mailer's findings, and testimony from Mr. Mandale that he saw water coming from the pipe on the day the damage occurred. (ECF No. 33 at 19–23). Given this evidence, we find that a reasonable jury could find in favor of Plaintiff, and therefore, Defendant's motion for summary judgment is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to exclude Plaintiff's expert witness is **DENIED.** Defendant's motion for summary judgment is likewise **DENIED**. An Order follows.


Dated:  8/24/2023                                                    s/ Robert B. Kugler
                                                                     ROBERT B. KUGLER
                                                                     United State District Judge